IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| XAVIER CALDWELL, ID # 1011382, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:04-CV-0154-D |
| | ) | |
| NATHANIEL QUARTERMAN,[1] Director, | ) | |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge.  The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I.  BACKGROUND

### A.  Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his conviction for capital murder in Cause No. F00-02186-LW.  Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

### B.  Procedural and Factual History

On May 18, 2000, the State indicted petitioner for the capital murder of Rhonda Lee.  TR[2] at 2.  At trial, several witnesses testified for the State, including Lieutenant Steve Higgins and

---

[1]  On June 1, 2006, Nathaniel Quarterman became the Director of the Texas Department of Criminal Justice - Correctional Institutions Division.  The Court thus substitutes him for Douglas Dretke.  *See* Fed. R. Civ. P. 25(d)(1).

[2]  "TR" refers to the state trial record in Cause No. F00-02186-LW.

Detective Steve Lafferty.  *See* Reporter's Record, Vol. I at 2-3 [hereinafter cited as RR-volume # at page].  Officer Higgins provided testimony regarding the circumstances of petitioner's arrest and an oral confession by petitioner that he "had killed Rhonda."  RR-III at 103-12.  Detective Lafferty provided testimony regarding a second oral confession by petitioner as well as the circumstances surrounding a written confession to the murder.  *Id.* at 220-28.

Prior to receiving testimony from Officer Higgins, the trial court conducted a hearing outside the presence of the jury in which it heard testimony regarding the circumstances of petitioner's arrest and the first oral confession made to the officer.  *Id.* at 57-70.  The trial court denied a motion to suppress the first oral confession, finding that the police had properly arrested petitioner on reasonable suspicion and probable cause without an arrest warrant.  *Id.* at 70.

Prior to receiving trial testimony from Detective Lafferty, the court held a *Denno*[3] hearing in which it ruled that petitioner had voluntarily confessed to murdering the decedent.  *See id.* at 140-79.  "Based on the credible and believable evidence", the court overruled petitioner's motion to suppress his second oral confession and the written statements, and specifically ruled that petitioner "freely and voluntarily" made the statements after he was read his *Miranda*[4] rights and waived such rights.  *Id.* at 179.

On November 1, 2000, a jury convicted petitioner of capital murder.  RR-V at 31.  The trial court sentenced him to life imprisonment.[5]  *Id.* at 33.  On May 2, 2002, the court of appeals affirmed the conviction.  *See Caldwell v. State*, No. 08-01-00036-CR, 2002 WL 831158, at *1 (Tex. App. –

---

[3] *Jackson v. Denno*, 378 U.S. 368 (1964).

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[5] The State did not seek the death penalty.  *See* RR-II at 4.

2

El Paso May 2, 2002, pet. ref'd).   The Texas Court of Criminal Appeals thereafter refused peti-

tioner's petition for discretionary review.   (Pet. Writ of Habeas Corpus (Pet.) at 3.)   Petitioner filed

no state application for writ of habeas corpus.   (*Id.* ¶ 10.)

On January 21, 2004, petitioner filed the instant petition for federal habeas relief.   (*See* Pet.

at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file

their federal pleadings when they place them in the prison mail system).   Respondent thereafter filed

an answer and provided the state-court records.

## C.  Substantive Issues

In thirteen numbered grounds for relief, petitioner raises the following four claims:   (1) the

evidence presented against him is legally insufficient to support his capital murder conviction

(Grounds 1 through 7); (2) a fatal variance between his indictment and the proof at trial renders the

indictment defective (Ground 1); (3) the trial court erred in the instructions given to the jury

(Grounds 2, 3, and 4); and (4) the trial court abused its discretion when it admitted oral and written

statements that he made after an alleged unlawful arrest and in violation of his right to counsel

(Grounds 8 through 13).   (Pet. Writ of Habeas Corpus (Pet.) at 7-8 and two attached unnumbered

pages.)   In addition, in his "Closing Arguments", petitioner asserts a double jeopardy claim.   (*See*

Closing Argument at 1-3, attached to Pet.)

## D.  Procedural Issues

Respondent asserts that petitioner has not exhausted all of his claims.   (*See* Answer at 8-13.)

Depending on the claim, he either seeks dismissal for the failure to exhaust or  dismissal of the claim

as procedurally barred.   (*Id.*)   For one claim, he alternatively urges the Court to deny the claim on

the merits.   (*Id.* at 13.)

Because it appears that petitioner is entitled to no habeas relief on the alleged unexhausted claims, the Court bypasses these procedural issues and proceeds to the merits of claims. *See* 28 U.S.C. § 2254(b)(2) (providing that the Court may deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"); *Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *4 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation which recognizes that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005).

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Petitioner raised each of his thirteen enumerated grounds for relief on direct appeal. *See Caldwell v. State*, No. 08-01-00036-CR, 2002 WL 831158, at *1-12 (Tex. App. – El Paso May 2, 2002, pet. ref'd). He also raised a claim regarding double jeopardy. *Id.* at *7. The court of appeals adjudicated each of these claims on the merits either completely or in the alternative. *See id.* at *1-12. Thus, the AEDPA standards enumerated in 28 U.S.C. § 2254(d) apply to the claims raised on direct appeal and reiterated in the instant federal action.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they

were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

With these AEDPA standards in mind, the Court proceeds to address the merits of petitioner's various claims. Because the resolution of some claims are somewhat dependent upon other claims, the Court will address petitioner's claims in a different order than presented to it.

### III.  DOUBLE JEOPARDY

In an attachment to his petition, petitioner claims that charging him with causing the decedent's death by arson and using the same arson offense to make his offense a capital murder violates the Double Jeopardy Clause of the United States Constitution. (Closing Argument, attached to Pet.)

The Double Jeopardy Clause protects against multiple prosecutions and punishments for the same offense. *See Monge v. California*, 524 U.S. 721, 727 (1998). More specifically, "the double jeopardy clause serves three interests, protecting against: (1) prosecution of the same offense after acquittal; (2) prosecution of the same offense after conviction; and (3) multiple punishments for the same offense." *United States v. Berry*, 977 F.2d 915, 918 (5th Cir. 1992).

Petitioner's arguments in this case implicate none of these interests protected by the Double Jeopardy Clause. He has neither been prosecuted twice nor received multiple punishments for the same offense. Because there has been only one prosecution and a single resulting punishment, petitioner's double jeopardy claim necessarily fails. Accordingly, this claim entitles petitioner to no habeas relief.

### IV.  TRIAL COURT ERROR

In Grounds 8 through 13, petitioner alleges that the trial court erred in admitting oral and written statements he made to Lieutenant Higgins and Detective Lafferty. (Pet. at attached pages.) In the first three of these claims, he argues that the court erred in admitting the statements because

6

they were obtained in violation of the Fourth Amendment to the United States Constitution and thus constitute fruit of the poisonous tree obtained pursuant to an illegal, warrantless arrest not supported by probable cause. (*Id.*)  In the latter three claims, he argues that the court erred in admitting the statements because he was denied counsel during custodial interrogations in violation of the Fifth Amendment. (*Id.*)  Because the alleged admissibility errors are intertwined with specific alleged violations of the United States Constitution, the Court will address the specific constitutional issues before addressing the alleged admissibility errors in general.

## A.  <u>Alleged Fourth Amendment Violations</u>

In essence, petitioner claims that the State convicted him by use of evidence gained from an unconstitutional arrest. (*See id.*)  Although claims of unlawful arrest arise under the Fourth Amendment to the United States Constitution, *see Avery v. Procunier*, 750 F.2d 444, 448 (5th Cir. 1985), a federal court cannot grant habeas relief on Fourth Amendment claims when "the State has provided an opportunity for full and fair litigation" of such claims, *see Stone v. Powell*, 428 U.S. 465, 494 (1976).

At trial in this case, petitioner moved to suppress the evidence obtained from the alleged illegal arrest, and the trial court denied the motion.  *See* RR-III at 112, 179.  The court of appeals found the presence of probable cause to arrest petitioner without a warrant, and thus found that petitioner had been legally arrested.  *See Caldwell v. State*, No. 08-01-00036-CR, 2002 WL 831158, at *10 (Tex. App. – El Paso May 2, 2002, pet. ref'd).  The appellate court also found that the trial court properly admitted the confessions at trial.  *Id.* at *12.  Because petitioner has had an opportunity to fully and fairly litigate his Fourth Amendment claims at the state level, and in fact did litigate such claims at the state level, *Stone* bars this Court's consideration of the claims on habeas review.

**B.  Alleged Fifth Amendment Violations**

Petitioner also claims that the State convicted him by use of evidence obtained after coercing him to waive his Fifth Amendment right to counsel.  (*See* Pet. at attached pages.)

As recognized in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Fifth Amendment's "prohibition against compelled self-incrimination require[s] that custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981).  The accused, however, may "validly waive his rights and respond to interrogation" after receiving his *Miranda* warnings.  *Id.* at 484.  An individual accused of a crime who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."  *Id.* at 484-85.  *Miranda* "and its progeny in th[e United States Supreme] Court govern the admissibility of statements made during custodial interrogation in both state and federal courts." *Dickerson v. United States*, 530 U.S. 428, 432 (2000).

In this case, the following facts are undisputed:  (1) officers properly advised petitioner of his *Miranda* rights prior to his oral and written confessions; (2) questioning immediately ceased when petitioner requested counsel; and (3) petitioner himself initiated further communication with the police when he asked to speak to an investigator after requesting counsel but prior to counsel appearing on his behalf.  *See Caldwell*, 2002 WL 831158, at *11.  Furthermore, the credible evidence of record supports finding the following facts true:  (4) petitioner "blurted out that he had killed" the decedent when Lt. Higgins arrived in response to petitioner's request to speak to an investigator; (5) such statement was not in response to any question by anyone; (6) Lt. Higgins refused to speak to petitioner after that confession, asked petitioner whether he wanted to speak to a different investigator, and arranged for petitioner to speak to Detective Lafferty after petitioner indicated that he desired to speak to a different investigator; (7) Lafferty re-read petitioner his *Miranda* rights, had petitioner sign a card containing the *Miranda* warnings, and petitioner again orally confessed to mur-

8

dering the decedent without questioning by the detective; and (8) petitioner made a written confession in the presence of Lafferty and two civilian police employees, initialed each page of such confession, and acknowledged the *Miranda* warnings contained on the form in several places. *Id.*

Although petitioner disputes these latter facts, the trial court found petitioner's version of events not credible, and believed the testimony presented by law enforcement personnel. *See* RR-III at 179. Such credibility finding is presumed correct unless petitioner rebuts it with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Petitioner has not shown clear and convincing evidence that overcomes the presumption of correctness. The record simply does not support petitioner's version of events surrounding his alleged coerced confessions. In view of the credibility finding of the trial court, the record is clear that petitioner knowingly, voluntarily, and intelligently waived his right to counsel after his initial request for counsel. Consequently, the Court finds no Fifth Amendment violation.

## C. Evidentiary Rulings

Petitioner alleges generally that the trial court erred in admitting his confessions because they were obtained in violation of the United States Constitution. (Pet. at attached pages.) The court of appeals found no constitutional violation and found the confessions properly admitted. *See Caldwell*, 2002 WL 831158, at *10-12. In the preceding sections, this Court has likewise found no constitutional violation. Because the alleged admissibility errors focus on alleged violations of the United States Constitution that did not occur, the Court finds no error related to the trial admission of petitioner's confessions. In the absence of an error by the trial court, Grounds 8 through 13 entitle petitioner to no habeas relief.

## V.  REMAINING CLAIMS

In Grounds 1 through 7, petitioner purports to challenge the sufficiency of the evidence in a number of respects. (*See* Pet. at 7-8 and attached pages.) In Ground 1, he argues that the evidence is legally insufficient to support his conviction because of a "fatal variance" between the indictment and the proof presented at trial on the capital element. (*Id.* at 7.) In Grounds 2, 3, and

9

4, he argues that the evidence is legally insufficient because the trial court erroneously instructed the jury when it permitted the jury to convict him of capital murder (1) on the basis of arson committed against an individual; (2) when the indictment does not adequately charge him with such crime; and (3) when arson was alleged as the underlying felony and the manner and means of committing the murder. (*Id.* at 7-8.) In Grounds 5, 6, and 7, he argues that the evidence is legally insufficient because (1) the State relied on the same act of arson for the capital element as well as the manner and means of committing murder and (2) without his confessions, there is insufficient independent evidence to establish the *corpus delicti* for murder or capital murder. (*Id.* at attached pages.)

Although couched in terms of sufficiency of the evidence, many of these grounds for relief raise issues separate and distinct from a mere sufficiency claim. The Court will nevertheless address the sufficiency of the evidence to support petitioner's capital murder conviction before considering the other issues raised by these grounds for relief.

## A. Sufficiency of the Evidence

"A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense." *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992). Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979). When reviewing such claims against the underlying conviction, the relevant question "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. When "faced with a record of historical facts that supports conflicting inferences[, courts] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

Further, under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility

of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[] the weight or credibility given the evidence." *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999). The *Jackson* standard applies whether the evidence is direct or circumstantial. *United States v. Scott*, 159 F.3d 916, 920 (5th Cir. 1998).

Federal courts apply the "standard looking to the state's substantive law, giving great weight to the state court's determination." *Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir. 2000). State case law and statutes bind the courts in their determination of the elements needed to be proven. *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992). In reviewing a challenge to the sufficiency of the evidence supporting the underlying conviction, "*Jackson* requires . . . that the review occur 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Bledsue v. Johnson*, 188 F.3d 250, 259 (5th Cir. 1999) (quoting *Jackson*, 443 U.S. 324 n.16). The federal courts must "independently analyze the governing statute, the indictment, and the jury charge to measure the constitutional sufficiency of the evidence and determine what are the *essential elements* required by the *Jackson* sufficiency inquiry." *Id.* at 260. Such independent analysis is required so as to avoid reliance upon an incorrect jury charge or indictment. *Id.* When considering a claim of insufficient evidence to support the underlying conviction on federal habeas review, this Court should only determine "whether the evidence was constitutionally sufficient to convict [petitioner] of the crime charged." *Id.* at 262 (quoting *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991)).

In this case, the State charged petitioner with capital murder. TR at 2. The indictment specifically alleges that, on or about May 5, 2000, in Dallas County, Texas, petitioner did

> unlawfully then and there knowingly and intentionally cause the death of RHONDA LEE, an individual, hereinafter called deceased, by setting a fire, a deadly weapon, in a room occupied by said RHONDA LEE causing her to suffer thermal injury and smoke inhalation and by strangling said RHONDA LEE with defendant's hand and hands, a deadly weapon, and by strangling the deceased with an unknown object, a deadly weapon, the exact nature and description of which is unknown to the Grand Jurors, and by a manner and means unknown to the Grand Jurors and the defendant

intentionally did cause the death of the deceased while said defendant was in the course of committing and attempting to commit the offense of arson of RHONDA LEE.

*Id.* The trial court, furthermore, read the following charge to the jury:

Our law provides that a person commits the offense of murder if he intentionally or knowingly causes the death of an individual.

. . .

A person commits capital murder when such person intentionally commits the murder in the course of committing or attempting to commit the offense of arson.

Our law provides that a person commits the offense of arson if he starts a fire with intent to destroy or damage any building, habitation, or vehicle knowing that it is within the limits of an incorporated city or town, or knowing that it is located on property belonging to another, or when he is reckless about whether the burning will endanger the life of some individual or the safety of property of another.

*Id.* at 29. The jury charge is consistent with Texas law regarding murder, capital murder, and arson. *See* Tex. Penal Code Ann. §§ 19.02(b)(1), 19.03(a)(2), and 28.02(a)(2) (Vernon 2003).

In this instance, petitioner made oral and written confessions that he killed the decedent. The written statement specifically reveals that he set a fire in a room occupied by the decedent after choking her for two or three minutes. (*See* State's Ex. 41, contained within RR-VI.) The written statement constitutes sufficient evidence to support the conviction. His confessions established that petitioner intentionally murdered the decedent during the course of committing arson. From the actions set forth in the written confession, one can reasonably infer that he had the specific intent to kill the victim. From the evidence presented at trial, a rational jury could have found all essential elements of capital murder beyond a reasonable doubt. That the State relied on the fire started by petitioner as a manner and means of committing the murder and relied on the act of arson to make the murder a capital offense does not alter the sufficiency of the evidence to support the conviction. As previously discussed, furthermore, the trial court properly admitted the confessions. Therefore, whether evidence independent from the confessions is sufficient to support the conviction is immaterial to this Court's determination.

For these reasons, Grounds 5, 6, and 7 entitle petitioner to no habeas relief. In addition, to the extent Grounds 1 through 4 present an insufficiency-of-the-evidence claim, they likewise entitle

petitioner to no habeas relief.  The Court now proceeds to address the other issues raised by Grounds 1 through 4.

## B.  Fatal Variance (Ground 1)

In his first ground for relief, petitioner alleges a fatal variance between the indictment and the proof presented at trial regarding the capital element of his charged offense.  (Pet. at 7.)  In the preceding section, the Court resolved this claim against petitioner to the extent it challenges the sufficiency of the evidence to support petitioner's capital murder conviction.  The Court now considers the claim as a challenge to the validity of the indictment.  When the court of appeals considered the claim, it found that, at its core, the claim alleges that the indictment was defective because it failed to properly track the language of the arson statute.  *See Caldwell*, 2002 WL 831158, at *5.

Although the Court recognizes that Ground 1 raises a claim that the indictment against petitioner was defective, "[t]he sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction."  *Alexander v. McCotter*, 775 F.2d 595, 598 (1985).  Federal courts, furthermore, will not consider claims that a state indictment is insufficient to confer jurisdiction upon the trial court when the issue "was squarely presented to the highest court of the state" and it can reasonably be inferred that the court passed on the merits of the sufficiency issue.  *Id.* at 598-99.  In a habeas proceeding, this Court does not sit in review of a state court's interpretation of its own law.  *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).

Petitioner raised the sufficiency of the indictment on direct appeal, and the court of appeals found the indictment legally sufficient.  *Caldwell*, 2002 WL 831158, at *7.  This Court will not review that explicit finding.  *See Alexander*, 775 F.2d 598-99.  The sufficiency-of-the-indictment claim contained within Ground 1 entitles petitioner to no federal habeas relief.

## C.  Erroneous Jury Instructions (Grounds 2, 3, and 4)

In Grounds 2, 3, and 4, petitioner argues that the trial court erroneously instructed the jury in three specific respects.  (Pet. at 7-8.)  He argues that the instructions permitted the jury to convict

him of capital murder (1) on the basis of arson committed against an individual instead of property; (2) when the indictment does not adequately charge him with capital murder; and (3) when arson was alleged as the underlying felony and the manner and means of committing the murder.  (*Id.*)

"Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief."  *Tarpley v. Estelle*, 703 F.2d 157, 159 (5th Cir. 1983) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)).  "A state prisoner seeking federal habeas relief for erroneous jury instructions faces a heavy burden."  *Reddix v. Thigpen*, 805 F.2d 506, 512 (5th Cir. 1986).  "Before a federal court may overturn a conviction resulting from a state trial" on a challenge to the instructions given to the jury, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  *Cupp*, 414 U.S. at 146; *Reddix*, 805 F.2d at 512.  That an instruction is "allegedly incorrect under state law is not a basis for habeas relief."  *Estelle*, 502 U.S. at 71-72.  "In examining habeas claims of improper jury instructions, the 'inquiry is not whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude.'"  *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (quoting *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986)).  On habeas review, federal courts must only determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147).  Thus, the "harmless-error analysis [applies] to cases involving improper instructions."  *See Neder v. United States*, 527 U.S. 1, 9 (1999).

A petitioner is entitled to federal habeas relief due to trial error only if such error is not harmless within the meaning of *Brecht v. Abrahamson*, *i.e.*, "the error 'had substantial and injurious effect or influence in determining the . . . verdict.'"  507 U.S. 619, 637-38 (citation omitted).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict.  It must have had a substantial effect or influence in determining the verdict.  We recognize, however, that if our minds are "in virtual equipoise as to

the harmlessness," under the *Brecht* standard, of the error, then we must conclude
that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)).  To be entitled to federal habeas relief due to a trial error, petitioner must show the error actually prejudiced him.  *Brecht*, 507 U.S. at 637.  To determine the degree of harm to petitioner, if any, the Court looks at the totality of the circumstances.

In this instance, petitioner presents three arguments in support of his contention that the jury instructions were in error.  He presented the same arguments on direct appeal, and the court of appeals found no reversible error.  *Caldwell*, 2002 WL 831158, at *7-8.  This Court need not definitively decide whether the trial court erred in the instructions given to the jury because the alleged errors in instructing the jury, even if true, do not render petitioner's trial fundamentally unfair on the facts of this case.  The Court finds no harm from any error in instructing the jury.  There is no reasonable possibility that any error regarding the jury instructions contributed to the verdict.  There is no reasonable possibility that had the trial court instructed the jury differently the verdict would have changed.  Any error in instructing the jury simply had no substantial or injurious effect or influence in determining petitioner's guilt, and is thus harmless.  The alleged instructional errors contained within Grounds 2, 3, and 4 entitle petitioner to no habeas relief.

### VI.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

### VII.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

15

SIGNED this 26th day of August, 2006.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

16